**LOCAL 32B–32J, SERVICE EMPLOY-EES INTERNATIONAL UNION, AFL–CIO, Plaintiff,**

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Captain "John" Cambriati, Commanding Officer of the Port Authority Police, "John Smith," "James Roe," and "John Doe," the last three names being fictitious and the true names being unknown, but the persons intended being officers, patrolmen and members of the said Port Authority Police, and National Airlines, Inc., Defendants.**

No. 78 Civ. 5825 (CES).

United States District Court,
S. D. New York.

Dec. 20, 1978.

Israelson, Manning & Raab, New York City, by Allen Mathers, New York City, for plaintiff.

Patrick J. Falvey, New York City., for Port Authority defendants.

Poletti, Friedin, Prashker, Feldman & Gartner, New York City, by Eric Rosenfeld, New York City, for defendant National Airlines.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff, Local 32B–32J, Service Employees International Union, AFL–CIO ("the Union"), brought this action by Order to Show Cause issued December 5, 1978, seeking a temporary restraining order and a preliminary injunction restraining the defendants from interfering with the Union's peaceful picketing outside the National Airlines terminal building at J.F.K. International Airport. The Union's underlying dispute was not with National Airlines, Inc. ("National"), but with a company, Servair Maintenance, Inc. ("Servair"), with whom National contracted to perform various janitorial and maintenance services in and about the terminal building. The Union asserts that its right to picket in order to publicize its dispute with Servair, on property leased by National from the Port Authority of New York and New Jersey ("Port Authority") is protected and guaranteed by the First Amendment to the United States Constitution and by § 7 of the National Labor Relations Act, 29 U.S.C. § 157.

The Union's request for a temporary restraining order was denied from the bench on December 7, 1978. The parties submitted additional materials on the question of whether a preliminary injunction should issue, and a hearing was held on December 19, 1978, at the conclusion of which this Court denied the preliminary injunction. This memorandum sets forth more fully our reasons for so doing.

■ Initially, the Union argued in support of its position that, because it sought to place its pickets outside rather than inside the terminal building, the picketing was protected activity. This argument was unavailing since the paved area which encircles the terminal building, although used by the public for access to the building, is nevertheless private property on which there exists no constitutionally-protected right to picket. *Hudgens v. National Labor Relations Board*, 424 U.S. 507, 520–21, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) ("*Hudgens*"). *Hudgens* held that unless the private property in question was the functional equivalent of a municipality as in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), "the constitutional guarantee of free expression has no part to play." *Hudgens, supra*, 424 U.S. at 521, 96 S.Ct. at 1037.

In an attempt to hurdle the considerable barrier imposed by *Hudgens*, the Union argues in support of its motion for a preliminary injunction that J.F.K. International Airport is the functional equivalent of a municipality and that the National terminal area is but "one area of a vast municipal airport." From this, we suppose, it must follow that the Union's right to picket on National property is entitled to constitutional protection.

■ This argument can be disposed of without reaching the question of whether the airport is the functional equivalent of a municipality, for it ignores the fact that the property leased by National from the Port Authority is *private* property.[1] In order to

1. If we were to accept the Union's argument that the picketing on National's property is entitled to constitutional protection by virtue of the fact that the terminal is but "one area of a vast municipal airport," we would be establishing a rule for "functional municipalities" that does not apply to actual municipalities: namely, that all private property within the geo-

establish that the right to picket on National's property is constitutionally-protected, the Union must prove that that property, not the airport as a whole, is functionally equivalent· to a municipality. The Union must prove that National has assumed as to its terminal property all the attributes of a state-created municipality and exercises semi-official municipal functions as a delegate of the State. *Hudgens, supra,* 424 U.S. at 519, 96 S.Ct. 1029 (quoting from *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972)). It seems that if a large shopping center is not the functional equivalent of a municipality under this test, *Hudgens, supra,* a private terminal area within an airport clearly is not.

 Because the property on which the Union wishes to picket is ordinary private property and because "the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state," *Hudgens, supra,* 424 U.S. at 513, 96 S.Ct. at 1033, the constitutional guarantee of free speech has no part to play in this case. The statutory right to picket under § 7 of the National Labor Relations Act, *supra,* may be relied on by the Union, but the balancing of the right to picket guaranteed by that section against the rights of the private property owner on whose property the picketing is desired is in the first instance a matter within the exclusive jurisdiction of the National Labor Relations Board. *Hudgens, supra,* 424 U.S. at 522, 96 S.Ct. 1029.

For these reasons, we have denied the Union's motion for a preliminary injunction.

SO ORDERED. .

graphic limits of a city, simply because it is within those limits, may be utilized as a public forum subject only to time, place and manner limitations.